UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| GRINNELL MUTUAL REINSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 1:23-cv-00931-JPH-MG ) |
| SHERMAR OIL, LLC, AJAY PAUL, AARON JONES, | ) ) ) ) |
| Defendants. | ) ) |

**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

In an underlying state-court lawsuit, Aaron Jones seeks damages after he was shot by Ajay Paul, who was working at a gas station owned by Shermar Oil. Shermar Oil's insurer, Grinnell Mutual Reinsurance Company, then brought this action seeking a declaratory judgment that it has no duty to defend or indemnify Shermar Oil and Mr. Paul in that underlying lawsuit. Grinnell and Shermar Oil have filed cross-motions for summary judgment. For the reasons below, Shermar Oil's motion, dkt. [56], is **DENIED**, and Grinnell's motion, dkt. [62], is **GRANTED**.

**I.
Facts and Background**

The parties have filed cross-motions for summary judgment, so the Court takes the motions "one at a time." *Am. Fam. Mut. Ins. v. Williams*, 832 F.3d 645, 648 (7th Cir. 2016). For each motion, the Court views and recites the evidence and draws all reasonable inferences "in favor of the non-moving

1

party." That's not necessary here, however, because even when all evidence is interpreted in Defendants' favor, Grinnell is entitled to summary judgment.

### A. Underlying facts

In November 2022, Mr. Jones visited a gas station in Indianapolis. Dkt. 62-1 at 9 (Jones Dep. at 7). After parking at the pumps, he went inside the store and bought antifreeze. *See id.* at 28–29 (Dep. at 26–27). Shortly after leaving the store, Mr. Jones noticed that the antifreeze bottle's seal was already broken, so he went back inside the store to swap it for a new one. *Id.* at 34–35 (Dep. at 33–34). Mr. Jones told Ajay Paul, a clerk at the store, what he was doing. *Id.* at 34–35, 44–45 (Dep. at 33–34, 42–43).

Mr. Jones then went back out to his car, but Mr. Paul—suspecting that Mr. Jones was stealing antifreeze—followed him and threatened to report him to the police. *Id.* Mr. Jones went back into the store, carrying the antifreeze bottle and a small jack handle he had been using to pry open the hood of his car. *Id.* at 33, 50 (Dep. at 31, 49); dkt. 62-3 at 3:15–40. Just inside the doorway, Mr. Jones and Mr. Paul got into an argument, which escalated into a physical brawl after Mr. Paul hit Mr. Jones in the face. Dkt. 62-1 at 58 (Jones Dep. at 56); dkt. 62-3 at 3:36–55. Another person pulled Mr. Jones away from Mr. Paul, and then Mr. Jones exited the store. Dkt. 62-3 at 3:36–55.

Mr. Paul stayed in the store, where someone else handed him a loaded handgun. Dkt. 62-3 at 3:50–59. Within seconds, Mr. Jones realized he had dropped his car keys during the fight and turned around back toward the store to get them. Dkt. 69-2 at 27 (Jones criminal trial testimony). Mr. Paul opened

2

the door and shot several times, hitting Mr. Jones in the back, thigh, and wrist.[1]  Dkt. 62-1 at 123–29 (Jones Dep. at 121–27); dkt. 62-3 at 4:03.

Four days later, the State of Indiana charged Mr. Paul with aggravated battery; battery by means of a deadly weapon; criminal recklessness; and battery resulting in bodily injury.  Dkt. 62-6 (charging information in cause number 49D30-2211-F3-031435).  In July 2024, a jury convicted Mr. Paul of criminal recklessness and battery resulting in bodily injury, but did not reach a verdict on the other counts.  Dkt. 62-7.

In May 2023, Mr. Jones sued Shermar Oil and Mr. Paul in Indiana state court, alleging negligence against Mr. Paul; vicarious liability and negligent hiring, retention, and supervision against Shermar Oil; and seeking punitive damages.  *See* dkt. 1 at 2–3; dkt. 23-1 (amended state-court complaint).

### B. The insurance policy

At the time of the shooting, Shermar Oil was covered by a commercial general liability insurance policy issued by Grinnell.  Dkt. 1-1 at 1.  The policy also covered Shermar Oil's "'employees' . . . but only for acts within the scope of their employment for you or while performing duties related to the conduct of [Shermar Oil's] business."  *Id.* at 67.  Under the "Separation of Insured" provision, the policy applies "[a]s if each Named Insured were the only Named

---

[1] Mr. Jones and Mr. Paul dispute whether Mr. Jones was still approaching Mr. Paul when he fired the gun, or whether Mr. Jones had already turned to flee.  *See* dkt. 63 at 8; dkt. 70 at 7.  They also dispute whether the wound to Mr. Jones's back was caused by the bullet's exit or its entry.  *See* dkt. 63 at 10; dkt. 70 at 7.  For the reasons below, neither dispute is material.

3

Insured," and "separately to each insured against whom claim is made or 'suit' is brought." *Id.* at 69.

The policy requires Grinnell to pay "sums that the insured becomes legally obligated to pay as damages because of 'bodily injury'" if that injury is "caused by an 'occurrence.'" *Id.* at 57. The policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at 71.

### C. Procedural history

Grinnell filed this case in May 2023 seeking a declaratory judgment that it has no duty to defend or indemnify Shermar Oil and Mr. Paul in Mr. Jones's underlying state-court suit. Dkt. 1 at 11. Shermar Oil and Grinnell have filed cross-motions for summary judgment.[2]  Dkt. 56; dkt. 62.

## II.
## Summary Judgment Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must inform the court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324.

---

[2] Mr. Paul and Mr. Jones do not seek summary judgment, *see* dkt. 56, but have responded in opposition to Grinnell's motion for summary judgment, dkt. 70.

4

In ruling on cross motions for summary judgment, the Court takes the motions "one at a time," viewing and reciting the evidence and drawing all reasonable inferences "in favor of the non-moving party." *Williams*, 832 F.3d at 648.

### III.
### Analysis

The parties agree that Indiana law applies. Dkt. 57 at 7; dkt. 63 at 20–21. Absent a controlling decision from the Indiana Supreme Court, the Court does its best to predict how that court would rule on issues of law. *Mashallah, Inc. v. W. Bend Mut. Ins. Co.*, 20 F.4th 311, 319 (7th Cir. 2021). In doing so, the Court may consider decisions from the Indiana Court of Appeals. *See id.* Under Indiana law, insurance policy interpretation is "primarily a question of law." *Wagner v. Yates*, 912 N.E.2d 805, 808 (Ind. 2009). Indiana courts "give clear and unambiguous language in a policy its plain and ordinary meaning." *Ebert v. Illinois Cas. Co.*, 188 N.E.3d 858, 864 (Ind. 2022).

**A. Coverage as to Mr. Paul**

The policy here covers "'bodily injury' . . . caused by an 'occurrence,'" and defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Dkt. 1-1 at 57, 71. Indiana law defines "accident" in this context as "an unexpected happening without an intention or design." *Sheehan Constr. Co. v. Cont'l Cas. Co.*, 935 N.E.2d 160, 170 (Ind. 2010) ("Implicit in the meaning of 'accident' is the lack of intentionality.").

Grinnell argues that the shooting was not an "accident," so there is no "occurrence" under the policy and it is not required to defend or indemnify Mr. Paul. *See* dkt. 63 at 22–25. Defendants respond that there is a triable issue of fact on whether the shooting was an "accident" because even though Mr. Paul intentionally fired the gun, he did not intend to shoot or injure Mr. Jones. Dkt. 70 at 17–23.

Under Indiana law, unintended injuries from an intentional act can sometimes qualify as an "accident." *Auto-Owners Ins. Co. v. Harvey*, 842 N.E.2d 1279, 1284–85 (Ind. 2006) (holding that a slip, fall, and drowning could qualify as an "accident" even though it resulted from an intentional push); *FLM, LLC v. Cincinnati Ins. Co.*, 24 N.E.3d 444, 454–55 (Ind. Ct. App. 2014). Defendants rely on *Harvey* to argue that the harm to Mr. Jones was unintentional even though Mr. Paul's firing the gun was not. Dkt. 70 at 19. But in *Harvey*, the intentional act and the harm were separated. There, teenagers Brandy Harvey and Toby Gearheart were having a sexual encounter on a boat ramp when they got into a shoving match. *Harvey*, 842 N.E.2d at 1281–82. After Ms. Harvey pushed Mr. Gearheart, he shoved her and she slipped, fell down a rocky embankment, and drowned in the river. *Id.* The Indiana Supreme Court held that while Mr. Gearheart intended to shove Ms. Harvey, there was a triable issue of fact about whether he intended the harm. *Id.* at 1284–85, 1291.

*Harvey* recognized, though, that in some instances the nature of an intentional act shows that the harm must have been intended. *Id.* at 1291

6

(There is no "occurrence" when, "from the very nature of an insured's actions, harm must have been intended."). For example, a death cannot be an "accident" under Indiana law when someone intentionally chases down and runs over someone. *State Farm Mut. Automobile Ins. Co. v. Sanders*, No. 3:17-cv-137, 2017 WL 4764347 at *3–4 (N.D. Ind. Oct. 19, 2017) (applying *Harvey*).

This rule applies to shootings like the one here. The Indiana Supreme Court has held that intent to harm necessarily is inferred as a matter of law when someone "deliberately fire[s] four shots into a crowd of fleeing people." *Allstate Ins. Co. v. Herman*, 551 N.E.2d 844, 845–46 (Ind. 1990). Other courts applying Indiana law also consistently infer intent to harm when someone injures a victim by intentionally shooting in their direction. *See State Farm Fire & Cas. Co. v. Castillo*, No. 2:11–CV–00303–WCL–APR, 2013 WL 1122730 at *6 (N.D. Ind. Mar. 18, 2013) (inferring intent as a matter of law even if it was disputed whether the shooter was aiming at the victim); *see also Allstate Ins. Co. v. Canell*, 133 F. Supp. 3d 1124, 1129 (N.D. Ind. 2015) (surveying Indiana law and holding that intent to harm was not established as a matter of law when evidence allowed the inference that the shot did not hit the victim and was fired as a warning to leave). So there cannot be an "occurrence" as a matter of law when someone takes a gun and "intentionally fir[es] it in the direction" of the victim. *Castillo*, 2013 WL 1122730 at *6.

Applying this rule here, the nature of Mr. Paul's actions necessarily establishes his intent to harm as a matter of law. The undisputed designated evidence shows that Mr. Paul (1) intentionally fired the gun immediately after

7

his physical altercation with Mr. Jones; (2) was only a few feet away from Mr. Jones when he fired the first shot; and (3) shot out of the store in Mr. Jones's direction. *See* dkt. 62-3 at 4:03–06. Indeed, each of those things is established by the video evidence in this case. *Id.*; *see United States v. Norville*, 43 F.4th 680, 682 (7th Cir. 2022) ("[A] video record of the events at issue can evaporate any factual dispute that would otherwise exist." (quoting *Scott v. Harris*, 550 U.S. 372, 381 (2007)). It's also undisputed that Mr. Paul shot Mr. Jones three times. Dkt. 62-1 at 123–29 (Jones Dep. at 121–27). On these facts, "from the very nature of an insured's actions, harm must have been intended." *Harvey*, 842 N.E.2d at 1291.[3]

In short, Mr. Paul's actions were dangerous and "pointedly directed" at Mr. Jones, which necessarily shows "intent to injure as a matter of law." *Canell*, 133 F. Supp. 3d at 1129; *see Herman*, 551 N.E.2d at 845. So, under the undisputed designated evidence here, no reasonable jury could find that Mr. Jones's injuries were an unintended consequence of Mr. Paul's intentionally fired shots. *See Castillo*, 2013 WL 1122730 at *6 (finding no accident despite the parties' dispute about whether the shooter aimed at the victim because "[r]egardless of which version of events the court considers, it is undisputed that [the shooter] has admitted the act of retrieving the weapon

---

[3] Because those undisputed facts resolve Mr. Paul's intent under Indiana law, the parties' disputes about whether Mr. Jones was still approaching Mr. Paul when he fired the gun and whether the wound to Mr. Jones's back was caused by the bullet's exit or its entry are not material. *See* dkt. 79 at 8 n.2 (Grinnell's arguing that while the video may not resolve all factual disputes, it "certainly dispels any argument [that] Mr. Paul did not mean to shoot Mr. Jones.").

8

and intentionally firing it in the direction of where [the victim] . . . [was] located").

Defendants nevertheless rely on Mr. Paul's affidavit testimony that he fired the shots out of fear and confusion and "did not aim or intend to harm Aaron Jones or any other person." Dkt. 70 at 21 (citing dkt. 69-1 at 2–3). But given the video evidence and Mr. Paul's trial testimony, that affidavit cannot show a triable issue of fact.

First, no reasonable jury could watch the video evidence and find that Mr. Paul did not aim at Mr. Jones when he fired the gun. *See* dkt. 62-3 at 4:03–06; dkt. 69-3; *Norville*, 43 F.4th at 682 ("[A] video record of the events at issue can evaporate any factual dispute that would otherwise exist."); *accord Pam v. City of Evansville*, 154 F.4th 523, 529 (7th Cir. 2025) ("[V]ideos that establish a fact 'with confidence' and 'beyond reasonable question' may eliminate factual disputes."). That's enough to establish intent, even accepting Mr. Paul's argument that Mr. Jones was moving toward the building when Mr. Paul shot him. *See Harvey*, 842 N.E.2d at 1291; *Herman*, 551 N.E.2d 844 at 845.

Even if the video weren't dispositive, Mr. Paul's affidavit testimony must be disregarded because it contradicts his prior testimony at his criminal trial that he shot at Mr. Jones:

9

Q. And did you say, "Go. Go right now. Get out of here. Go on. I've got a gun," and hold it up?

A. No.

Q. No, you didn't do that?

A. No.

Q. Did you fire a warning shot up in the air or down on the ground? No?

A. No.

\*   \*   \*

Q. You're the one who shot him, right?

A. I did shoot at the gentleman --

Q. You never saw him --

A. -- yes.

Q. -- with a gun?

A. I didn't know if he had a gun or not, sir. I'm not saying that I didn't shoot him, but I'm saying my life was in danger and I did what I had to do. You don't know he didn't have a gun. If he wasn't in the wrong, why would he hide a gun in the -- in the bushes in the -- at the end anyways?

Dkt. 62-2 at 62, 65 (Trial Tr. at 118, 191). Mr. Paul may not contradict his prior trial testimony in this case with a new affidavit. *See James v. Hale*, 959 F.3d 307, 316 (7th Cir. 2020) ("[T]he sham-affidavit rule prohibits a party from submitting an affidavit that contradicts the party's prior deposition or other sworn testimony."). Mr. Paul's trial testimony was clear that he shot "at the gentleman"—Mr. Jones—so Mr. Paul's new testimony to the contrary is disregarded. *See Clacks v. Kwik Trip, Inc.*, 108 F.4th 950, 956 (7th Cir. 2024)

10

("[C]ourts may disregard affidavits that add new factual details not previously disclosed in . . . testimony when those details seek to undo the effects of the prior testimony and manufacture a dispute to get past summary judgment."); *Kelly v. Stevanovich*, 40 F.4th 779, 787 (7th Cir. 2022) ("A weak affidavit—of questionable veracity, lacking corroborating evidence, and contradicting prior sworn . . . testimony—is insufficient to meaningfully refute" a strong summary-judgment showing based on "uncontested facts, supported by the evidence.").

In sum, no reasonable jury could find an "accident" here under Indiana law, so Mr. Paul's actions do not qualify as an "occurrence" under the policy.[4] Grinnell is therefore entitled to summary judgment as to coverage for Mr. Paul.

### B. Coverage as to Shermar Oil

In the underlying suit, Mr. Jones brings two claims against Shermar Oil—one for vicarious liability and the other for negligent hiring, retention, and supervision. Dkt. 23-1 at 2–3.

#### 1. Vicarious liability

Vicarious liability holds "a party legally responsible for the negligence of another, not because the party did anything wrong but rather because of the party's relationship to the wrongdoer." *Yost v. Wabash Coll.*, 3 N.E.3d 509, 518 (Ind. 2014). "Under this doctrine of imputed liability, an employer, who is not liable because of his own acts, can be held liable for the wrongful acts of his employee which are committed within the scope of employment." *Id.*

---

[4] Because Grinnell is entitled to summary judgment on this basis, the Court does not address whether Mr. Paul's state of mind is established by his criminal convictions or whether the policy's intentional act exclusion applies.

11

Grinnell argues that because Mr. Paul's shooting Mr. Jones was not an "accident" under the policy, Shermar Oil does not have policy coverage on Mr. Jones's vicarious liability claim. Dkt. 63 at 29. Shermar Oil contends that, under the policy's separation-of-insureds provision, Grinnell must consider Shermar Oil separately from Mr. Paul, making Mr. Paul's intent "irrelevant" as to Shermar Oil. Dkt. 57 at 8; dkt. 70 at 13–15.

Vicarious liability is built on the agency-law tenet of "the identity of principal and agent when the agent is engaged in the principal's business." *BGC Entertainment, Inc. v. Buchanan*, 41 N.E.3d 692, 701 (Ind. Ct. App. 2015). So, for a vicarious-liability claim, an employee's actions and knowledge are imputed to the employer. *See id.*; *Southport Little League v. Vaughan*, 734 N.E.2d 261, 274 (Ind. Ct. App. 2000). In other words, the principal and agent are treated as the same, with respondeat superior liability being the "means of extending liability" from the employee to the employer. *Stump v. Indiana Equip. Co.*, 601 N.E.2d 398, 403 (Ind. Ct. App. 1992). So when a claim rests on vicarious liability, the intentionality of the employee applies equally to the employer. *See Southport Little League*, 734 N.E.2d at 268 ("The doctrine of respondeat superior creates liability for the principal where it otherwise would not exist."); *accord In re Sterling*, 933 F.3d 828, 833–35 (7th Cir. 2019).

Indeed, Shermar Oil does not contest imputing Mr. Paul's intent to injure Mr. Jones to Shermar Oil as a matter of Indiana agency law. *See* dkt. 57 at 8–9; dkt. 70 at 14–15 (Shermar Oil's agreeing that this claim is for vicarious liability based on its employee's underlying acts). Dkt. 70 at 14. Shermar Oil

12

instead argues that the policy's separation-of-insureds provision, under which coverage applies "separately to each insured," prevents Mr. Paul's intent from being imputed to Shermar Oil.  Dkt. 1-1 at 69.

The Indiana Supreme Court has not addressed the application of separation-of-insureds provisions in the context of an agency relationship.  It has held, however, that such a provision does not prevent a finding that multiple insureds are not entitled to coverage for the same reason.  *See Holiday Hosp. Franchising, Inc. v. AMCO Ins. Co.*, 983 N.E.2d 574, 581 (Ind. 2013).  So, in *Holiday Hospitality*, the insured Holiday Inn Express and its insured employee were both excluded from coverage under an abuse/molestation exclusion after the employee abused a guest—notwithstanding the separation-of-insureds provision.  *Id.*  While *Holiday Hospitality* did not address any agency relationship due to the exclusion's broad language, it demonstrates that a separation-of-insureds provision does not prevent insureds from being excluded from coverage for the same reason, as long as they are considered separately.  *See id.*

It's therefore reasonable to predict that the Indiana Supreme Court would interpret the separation-of-insureds provision as requiring only that each insured receive its own independent analysis of coverage under the policy.  *See Green Plains Trade Grp., LLC v. Archer Daniels Midland Co.*, 90 F.4th 919, 927–28 (7th Cir. 2024) ("[W]hen the highest court of the state has not spoken" a federal court "must ascertain, as best [it] can, the rule of law that the highest court of the state would apply."); *see American Family Mut. Ins. Co. v. Bower*,

13

752 F. Supp. 2d 957, 960 (N.D. Ind. 2010) ("Severability clauses [in insurance policies] are commonly used to provide each insured with separate coverage, as if each were separately insured with a distinct policy."). Applying that approach here, Indiana agency law would still impute Mr. Paul's intent to Shermar Oil for a vicarious-liability theory if Shermar Oil were the only insured. *See BGC Entertainment, Inc.*, 41 N.E.3d at 701; *Yost*, 3 N.E.3d at 518.

That is what the Fourth Circuit has persuasively held, applying Virginia law, in a similar situation. *Liberty University, Inc. v. Citizens Ins. Co. of Am.*, 792 F.3d 520, 529–30 (4th Cir. 2015) (holding that a separation-of-insureds provision does not displace the rule that "an agent's intentionally tortious act cannot be 'unexpected' by the principal who is vicariously liable for the act"); *Green Plains Trade*, 90 F.4th at 927–28 (explaining that a federal court may consider other jurisdictions' decisions in predicting how the state's highest court would rule). So, as in *Liberty University*, this Court has "ample reason to anticipate that [the Indiana Supreme Court] would impute the intent of [Shermar Oil's] agents accordingly." 792 F.3d at 530. Defendants' cited cases do not show otherwise, because they involved direct rather than vicarious liability. *See Wayne Twp. Bd. of Sch. Comm'rs. v. Indiana Ins. Co.*, 650 N.E.2d 1205, 1209 (Ind. Ct. App. 1995) (explaining that the complaint's "separate allegations . . . against the school" brought "claims against the school under a theory of negligence in counts separate from that brought against" its employee, the school's principal); *Bower*, 752 F. Supp. 2d at 960.

14

Accordingly, Mr. Paul's actions were not an "accident" as to Shermar Oil under Mr. Jones's theory of vicarious liability. Grinnell is entitled to summary judgment motion as to coverage for the vicarious liability claim.

### 2. Direct liability

In the underlying lawsuit, Mr. Jones also alleges that Shermar Oil is liable for its negligent hiring, retention, and supervision of Mr. Paul. Dkt. 23-1 at 3. Because this is a direct claim based on Shermar Oil's own actions, Mr. Paul's intent is not imputed to Shermar Oil under the policy's separation-of-insureds provision. *See Wayne Twp. Bd. of Sch. Comm'rs*, 650 N.E.2d at 1209.

Even without intent to cause the harm, however, "commercial or professional conduct" is not always an "accident" or "occurrence" under Indiana law. *Tri-Etch, Inc. v. Cincinnati Ins. Co.*, 909 N.E.2d 997, 1001–02 (Ind. 2009) ("Lack of intentional wrongdoing does not convert every business error into an 'accident.'"). That's because a commercial general liability policy does "not guarantee the quality of work or products of its insureds." *Id.* So when an act fails to conform to the business's "standard of care for that profession," it is not a covered "occurrence." *Id.* Instead, it is a "[b]usiness risk" that "occurs as a consequence of the insured not performing well and is a component of every business relationship that is necessarily borne by the insured in order to satisfy its customers." *Id.* at 1003.

Grinnell argues that Shermar Oil's hiring, retention, and supervision constitutes such a business risk that is not an "occurrence." Dkt. 63 at 32–33.

15

Defendants respond that Mr. Paul's conduct cannot be characterized as a business risk "reasonably attributable" to Shermar Oil. Dkt. 70 at 17.

Indiana law construes the "business risk" rule broadly, encompassing negligent hiring and retention claims. *See Tri-Etch*, 909 N.E.2d at 1002. In *Tri-Etch*, the Indiana Supreme Court cited with approval an Indiana Court of Appeals decision holding that there was "no coverage for property damage alleged to have arisen from negligent hiring and retention of an employee." 909 N.E.2d at 1002 (explaining *Erie Ins. Co. v. American Painting Co.*, 678 N.E.2d 844 (Ind. Ct. App. 1997)). In *American Painting*, an employee who was supposed to paint a home instead burglarized it and set it on fire. 678 N.E.2d at 845. Despite the flagrant nature of the employee's actions, the Indiana Supreme Court in *Tri–Etch* recognized *American Painting* as an example of a non-covered claim "arising out of professional or other business services." 909 N.E.2d at 1002; *accord Allstate Ins. Co. v. McColly Realtors, Inc.*, 296 F. Supp. 3d 947, 956 (N.D. Ind. 2017) ("In [*American Painting*], the court found that even if American's hiring or retention of the employee was proven to be negligent, it was not accidental.").

Here, Mr. Jones's negligent hiring, retention, and supervision claim against Shermar Oil fits squarely within this rule. *See American Painting*, 678 N.E.2d at 846. That's because Shermar Oil's hiring, retention, and supervision of Mr. Paul was not an "accident," but an intentional choice made so that it could run its business. *See id.*; *Tri-Etch*, 909 N.E.2d at 1001–02.

Defendants resist this conclusion by arguing that it renders coverage illusory, since Grinnell could "avoid ever covering the [insured] business or its employees for any type of conduct, accident or otherwise." Dkt. 70 at 17. But under Indiana law's business-risk rule, an employer's hiring decision is not an "occurrence" because it was an intentional choice, even if the eventual harm was unintended. *See American Painting*, 678 N.E.2d at 846; *U.S. Liability Ins. Co. v. Parchman*, No. 1:11-cv-1244-TWP-DML, 2013 WL 2600406 at *5 (S.D. Ind. June 11, 2013). That narrow rule does not make coverage illusory. Instead, as *Tri-Etch* explained, "there is a difference between risks that arise out of a business and business risks," and the former (perhaps a premises-liability claim) may still be covered under a commercial general liability policy. 909 N.E.2d at 1003; *see Parchman*, 2013 WL 2600406 at *5.

Accordingly, Shermar Oil's hiring, retention, and supervision was not an "occurrence" under the policy, and Grinnell is entitled to summary judgment as to coverage for this claim.[5]

### C. Indemnification for punitive damages

The parties agree that Grinnell does not have a duty to indemnify for punitive damages under the policy. *See* dkt. 63 at 33–34; dkt. 70 at 28. Therefore, Grinnell is entitled to summary judgment as to Mr. Jones's punitive damages claim in the underlying lawsuit.

---

[5] Because there is no coverage for Mr. Paul or Shermar Oil under the policy, neither of them is required to pay Mr. Jones's medical expenses under the policy's medical payments provision. Dkt. 1-1 at 59; *see* dkt. 63 at 34–35 (recognizing that the provision's applicability hinges on whether there was an "occurrence").

17

# IV.
# Conclusion

Shermar Oil's motion for summary judgment is **DENIED**. Dkt. [56]. Grinnell's motion for summary judgment is **GRANTED**. Dkt. [62]. Grinnell is entitled to a declaration that it is not required to defend or indemnify Shermar Oil or Mr. Paul or provide medical-expense coverage for Mr. Jones. Final judgment shall issue by separate entry.

**SO ORDERED.**

Date: 11/6/2025

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All electronically registered counsel